# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LADONESTY FOWLKES,**

        **Plaintiff,**

    v.                                                                               **Case No. 19-CV-1648**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

## DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

**1. Introduction**

Plaintiff Ladonesty Fowlkes alleges that he has been disabled since January 15, 2013. (Tr. 400.) He seeks supplemental security income. After his application was denied initially (Tr. 217) and upon reconsideration (Tr. 229), a hearing was held before an administrative law judge (ALJ) on March 1, 2018 (Tr. 195-216). A supplemental hearing was held on July 10, 2018, to receive the testimony of a vocational expert. (Tr. 173-94.) On August 10, 2018, the ALJ issued a written decision concluding that Fowlkes was not disabled. (Tr. 101-21.) After the Appeals Council denied Fowlkes's request for review on April 3, 2019 (Tr. 7-15) Fowlkes filed this action.

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 8), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Fowlkes "has not engaged in substantial gainful activity since November 13, 2015, the application date." (Tr. 106.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Fowlkes has the following severe impairments: "a history of bilateral shoulder repairs, and mild cervical and lumbar disc disease."

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. § 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's

impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 108.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Fowlkes has the RFC

> to perform a range of light work as defined in 20 CFR 416.967(b); such that he can only occasionally reach overhead bilaterally, but can otherwise frequently but not constantly reach; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; and can have no more than occasional exposure to vibration, fumes, odors, dust, gases, poor ventilation, and hazards.

(Tr. 108.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work.

20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that "[t]he claimant has no past relevant work." (Tr. 115.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 115.) Specifically, relying on the testimony of a vocational expert, the ALJ concluded that examples of jobs Fowlkes could perform include "hand packager, light, unskilled with an SVP of 2, with 450,000 jobs nationwide; a labeler, light, unskilled with an SVP of 2, with 500,000 jobs nationwide; and an inserter, light, unskilled with an SVP of 1, with 120,000 jobs nationwide." (Tr. 116.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the

Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. **Analysis**

Although represented by counsel before the ALJ, Fowlkes is now representing himself. In his initial brief he raises three issues: (1) "Did the defendant err in denying benefits contrary to established policy relating to plaintiff's medical condition?"; (2) "Did the defendant err in denying benefits contrary to established policy relating to plaintiff's medical condition and medications he is prescribed which impairs his ability to work?"; and (3) "Did the defendant err in addressing the denial of benefits contrary to established policy relating to plaintiff's medical condition and medications he is prescribed which impairs his ability to work?" (ECF No. 14.)

Substantively, Fowlkes raises three arguments in his brief. First, he argues that the ALJ did not adequately consider the opiate medications he was prescribed and how those medications affected his ability to work as a forklift operator. He notes that he has long been prescribed opiates and argues that the ALJ failed to consider how the resulting "cognitive impairment from prescribed medications" could make it dangerous to work

as a forklift operator or be around "mechanical equipment or machinery" "in a factory setting." (Tr. 14 at 4-5.) He argues, "In this case, Plaintiff is a forklift operator.... The Defendant, did or should have known, that the medications used by the Plaintiff for years, prevented him from gainful employment as a forklift operator in the national economy as described at § 423(d)(2)(A)." (ECF No. 14 at 7; *see also* ECF No. 14 at 8 (arguing that the ALJ "failed to question or address the medications, including the opioid, Oxycodone and others, which individually or in combination, deny the Plaintiff the ability to return to the workforce in the national economy").)

Second, he argues that the ALJ's explanation was insufficiently detailed. In his view, "the Defendant simply denied any benefit without much explanation whatsoever. It is the ambiguity of the denial, which makes it difficult for the Plaintiff to fully address the denial in a more finite or detailed fashion here." (Tr. 14.)

Third, Fowlkes argues that the ALJ failed to appropriately consider the opinions of his treating physician. He argues, "In Plaintiff's case, his attending physician for years ruled that he was unfit for employment in the national economy and his return to work as a forklift operator." (ECF No. 14 at 8.)

The court will address each of these arguments in turn.

### 4.1. Effect of Medications

A central theme of Fowlkes's briefs is that he believes he is disabled because his opiate medications preclude him from his prior work as a forklift operator. (*See, e.g.*, ECF

No. 14 at 4 (arguing that the Commissioner "dismissed or ignored" "the Plaintiffs suitability for employment in his prior job as a forklift operator."; 7 ("In this case, Plaintiff is a forklift operator."); 7 ("The Defendant, did or should have known, that the medications used by the Plaintiff for years, prevented him from gainful employment as a forklift operator ….").) However, a person is disabled for purposes of social security benefits only if he is unable to work at any "substantial gainful activity," not merely if he is unable to perform his past relevant work. 20 C.F.R. § 416.972. Therefore, it is immaterial that Fowlkes may not be able to perform his prior job or that the jobs the vocational expert identified were "menial work" that "would mean all but minimum wage, when as a forklift operator, Plaintiff made almost double," as Fowlkes argues (ECF No. 20 at 11). The social security regulations state that "[w]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 416.972(a).

Nor is Fowlkes disabled merely because he is prescribed opiates. Opiate use may preclude certain types of work, including, perhaps, work as a forklift operator. *Cf. Wolvin v. Saul*, No. 18-CV-1285, 2019 U.S. Dist. LEXIS 171953, at *18 (E.D. Wis. Oct. 3, 2019) (questioning whether "a heavy user of narcotics" could work in a job involving explosives). But prescription opiate use does not preclude all work. Such a holding would revolutionize the social security disability program given how commonly opiates are prescribed in the United States.

Fowlkes argues that the ALJ "failed to question or address the medications, including the opioid, Oxycodone and others, which individually or in combination, deny the Plaintiff the ability to return to the workforce in the national economy." (ECF No. 14 at 8.) However, Fowlkes argues only that opiates may result in certain side effects. (ECF No. 14 at 7; see also ECF No. 14-1 at 9-10 (listing common side effects of Oxycodone).) He does not cite to any medical evidence suggesting *he* suffered side effects from his medication. In fact, the ALJ noted that Fowlkes reported "no adverse side effects" from his medication. (Tr. 113.) And when Fowlkes's treating physician was asked on a physical residual functional capacity questionnaire to identify any side effects of medication, the physician did not identify any. (Tr. 1059.)

In sum, Fowlkes has not demonstrated that the ALJ erred in his consideration of Fowlkes's medications.

**4.2. Sufficiency of the ALJ's Explanation**

The ALJ must build "an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). The ALJ need not discuss all the evidence in the record but may not ignore a line of evidence that undercuts his conclusion. *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018); *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017).

Aside from the argument that the ALJ failed to explain how Fowlkes could work as a forklift driver while taking opiates (which is discussed and rejected above), Fowlkes does not develop any argument as to in what way the ALJ's explanation was insufficient. Having failed to raise an argument, Fowlkes is not entitled to relief. *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.")

Nonetheless, in light of Fowlkes's pro se status, the court has independently reviewed the ALJ's decision and concludes that he fulfilled his obligation to provide good reasons for his conclusions and to connect his conclusions to the evidence. The ALJ evaluated Fowlkes's symptoms in accordance with SSR 16-3p and concluded, in part, that Fowlkes's daily activities are not as limited as one would expect given his claimed limitations. (Tr. 113.) For example, Fowlkes regularly worked as an extra in films, work that included out-of-state travel and that was so pervasive he reported that it prevented him from keeping appointments for physical therapy. (Tr. 113.) The fact that this acting work did not rise to the level of substantial gainful activity does not mean it is irrelevant to assessing Fowlkes's abilities. The ALJ could reasonably find that Fowlkes's ability to pursue and engage in this type of work was inconsistent with his allegations regarding the severity of his impairments.

The ALJ further noted that physical examinations generally showed, at most, modest impairment. (Tr. 113.) Moreover, the ALJ reasonably noted that Fowlkes had "had

only minimal earnings for many years prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (Tr. 114); *cf. Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020) (discussing the claimant's 25-year work history vis-à-vis the ALJ's assessment of the severity of his symptoms); *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) ("a good work history is … just one factor among many" that an ALJ considers in assessing symptom severity); *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017) ("a consistent work history weighs in favor of a positive credibility finding").

### 4.3. Treating Physician

Treating physicians are generally "most familiar with the claimant's conditions and circumstances." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). As a result, "a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Id.* (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Id.*

Having said that, the court will "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)). However, a treating physician's opinion that a patient cannot work or is disabled is not a

10
Case 2:19-cv-01648-WED   Filed 01/14/21   Page 10 of 15   Document 21

medical opinion but rather is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(d). Thus, an ALJ is not bound by a treating physician's opinion that his patient "is disabled" or cannot work.

Fowlkes's treating physician, Soliven Bautista, completed a physical residual functional capacity questionnaire and stated that Fowlkes's pain would frequently interfere with his attention and concentration, he could sit or stand for up to 30 minutes at a time and for a total of two hours in a workday, he must walk every 90 minutes for about 5 minutes, he was incapable of even a low stress job, he would need to be able to shift at will, he would require unscheduled breaks, was limited in his ability to lift anything more than 10 pounds, and would be absent about twice a month because of his impairments. (Tr. 1059-63.) The ALJ concluded that Bautista's opinion was entitled to "little weight" in part because "it is inconsistent with this physician's own findings and observations, which have observed the claimant to have normal gait, a negative straight leg raise, normal left shoulder examination, and only some lumbar and right shoulder tenderness on occasion." (Tr. 115.)

The ALJ's conclusion is supported by substantial evidence, and Fowlkes has not shown otherwise. The only specific argument he offers is that Dr. Bautista's opinion should be entitled to more weight than the opinions of the state agency physicians because Dr. Bautista had a longstanding treating relationship with Fowlkes. (ECF No. 20 at 10.) While a long-term treating relationship is relevant in weighing medical opinions,

11

*see* 20 C.F.R. § 416.927(c), an ALJ is not required to give greater weight to an opinion simply because the physician treated the claimant over an extended period. The ALJ provided an adequate reason for the weight he afforded the respective medical opinions, and his discounting of Dr. Bautista's opinion is not a basis for remand.

### 4.4. Additional Evidence

Fowlkes submitted a number of documents along with his initial brief. (ECF No. 14-1.) Nearly all appear to already be included in the administrative record. (*Compare, e.g.*, ECF No. 14-1 at 56-95 *with* Tr. 1966-2005.) But some appear to have been submitted after the ALJ issued his decision. Although Fowlkes does not seek remand pursuant to sentence six of 42 U.S.C. § 405(g), liberally construing Fowlkes's filings in light of his pro se status, *see Kabele v. Colvin*, No. 12 cv-776-wmc, 2015 U.S. Dist. LEXIS 39556, at *11-13 (W.D. Wis. Mar. 27, 2015), the court will consider whether this evidence merits remand.

"A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005) (quoting 42 U.S.C. § 405(g)). New evidence is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997)). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different

conclusion had the evidence been considered." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). The new evidence must be "relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review.'" *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

For present purposes the court addresses only whether this evidence is material. To the extent the evidence is not merely cumulative of other evidence in the record, it does not support a finding of disability. The records note that Fowlkes's "pain is well controlled with oxycodone" (ECF No. 14-1 at 59), "[h]e is able to work in the film business with the help of his pain medication" (ECF No. 14-1 at 59), his pain is moderate ranging from four to six out of ten (ECF No. 14-1 at 64, 70), and he denies adverse side effects from his medication (ECF No. 14-1 at 70). Imaging of his lumbar spine on April 5, 2018, revealed only mild disk space narrowing at the L5-S1 level. (ECF No. 14-1 at 89.) No other abnormalities were noted, and the overall impression was "[m]ild L5-S1 degenerative spondylosis." (ECF No. 14-1 at 89.) There is no reasonable probability that, if presented with this evidence, the ALJ would reach a different conclusion.

Finally, in a "To Whom It May Concern" letter dated January 21, 2019, from Dr. Bautista he states that Fowlkes "is currently unable to work due to a chronic medical condition." (ECF No. 14-1 at 20.) "[R]ecords 'postdating the hearing' and that 'speak only to [the applicant's] current condition, not to his condition at the time his application was

13

Case 2:19-cv-01648-WED   Filed 01/14/21   Page 13 of 15   Document 21

under consideration by the Social Security Administration' do not meet the standard for new and material evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989)). Moreover, the opinion is not a proper medical opinion because whether a claimant is capable of working, *i.e.*, whether he is disabled, is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(d). Therefore, the evidence submitted by Fowlkes fails to establish either that the ALJ's decision was wrong or that remand under sentence six of 42 U.S.C. § 405(g) is appropriate.

**5. Conclusion**

A person is not disabled merely because he is prescribed opiates or is unable to do his prior job. Because Fowlkes has not demonstrated that his use of opiates resulted in side-effects, he has failed to show that the ALJ erred by not considering potential side effects of opiate medications. Nor has Fowlkes shown that the ALJ's explanation of his decision was deficient. The ALJ satisfied his obligation to adequately connect his conclusion to the evidence. The ALJ gave good reasons for the weight he afforded Dr. Bautista's opinion. Finally, Fowlkes has failed to show that the evidence he submitted with his initial brief is new and material so as to merit remand under sentence six of 42 U.S.C. § 405(g).

Therefore, the court must affirm that ALJ's decision that Fowlkes has not been disabled at any point between November 13, 2015, and the date of the ALJ's decision, August 15, 2018.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**.

The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of January, 2021.

*[signature: William E. Duffin]*
WILLIAM E. DUFFIN
U.S. Magistrate Judge